**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT K. and MONICA K., on behalf of JOHN K., a minor, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. ) |
| HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF ILLINOIS, | ) ) ) ) ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiffs, ROBERT K. and MONICA K., on behalf of JOHN K. (collectively "Plaintiffs"), by and through their attorneys, MARK D. DE BOFSKY, MARIE E. CASCIARI, and DE BOFSKY SHERMAN CASCIARI REYNOLDS P.C., states the following as their Complaint against Defendant, HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF ILLINOIS ("Defendant" or "HCSC"):

**INTRODUCTION**

1. This case is brought under the Employee Retirement Income Security Act of 1974 ("ERISA") to enforce John K.'s rights under the health plan in which he is a participating beneficiary and to enjoin HCSC from reducing and potentially terminating coverage for medically necessary Applied Behavioral Analysis ("ABA") therapy for Autism Spectrum Disorder.

2. John K., the son of Robert K. and Monica K., was born in 2009 and suffers from an Autism Spectrum Disorder. Since 2019, John K. has been under the care of Anna Ivanenko, M.D., Ph.D., a psychiatrist, and KGH Autism Services ("KGH").

3. John K. has an extensive treatment regimen. In order to achieve gains and improvement in inappropriate behavior, maintain those gains, and prevent worsening of behavioral issues and aggression, John K.'s doctors and therapy providers have deemed 15 hours of ABA therapy per work medically necessary. John K.'s treating providers have also provided letters of medical necessity explaining the rationale for that quantum of ABA therapy.

4. A reduction in the amount of ABA therapy provided to John K. occurred in 2021 based on Defendant's refusal to approve reimbursement for more than 4 hours of ABA therapy per week despite John K.'s treating proivders consistent reiteration of the medical necessity of maintaining at least 15 hours of ABA therapy per week. That reduction in care resulted in a loss of skills John K. had previously achieved, along with an increase in behavioral issues including aggression, self-harm, and destruction of property.

5. On August 19, 2021, following an initial unsuccessful internal appeal, an independent external review overturned Defendant's denial of more than 4 hours per week of such therapy for a period covering January 10, 2021 through July 10, 2021, reinstating coverage of 15 hours of ABA therapy per week.

6. Notwithstanding the determination made by the independent review organization, just one month later, Defendant denied pre-approval for 15 hours per week of ABA therapy for John K. for the period of September 6, 2021 through March 6, 2022.

7. HCSC's latest decision to reduce coverage for John K.'s ABA therapy was inconsistent with his ongoing medical needs, which require at least 15 hours of ABA therapy per week to preserve the gains he has made, continue his progress, and prevent further deterioration in his condition. HCSC's decision also ignored the findings made by the independent external review organization only one month earlier.

2

## THE PARTIES, JURISDICTION, AND VENUE

8. Plaintiffs live in Park Ridge, Illinois, which is located within the Northern District of Illinois. Robert K. and Monica K. are the parents of John K., who is 12 years old and a minor.

9. HCSC, which is headquartered in Chicago, Illinois, underwrites and administers health care plans, including the plan at issue in this action, which was issued to Parkside Investments LLC, Robert K.'s employer.

10. This Court has jurisdiction over this action pursuant to ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)), which allows the district court to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, involves a group health plan insured by HCSC and sponsored by Parkside Investments LLC for the benefit of its employees and their dependents, which include Monica K. and John K.

11. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

12. Venue is proper in this District pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)), because the health care plan is administered in this District, the breach of the health care plan at issue in this case took place in this District, and HCSC resides in or may be found in this District.

## FACTUAL BACKGROUND

### Relevant Health Care Plan Provisions

13. John K. receives health care coverage as a beneficiary (as that term is defined by ERISA § 3(8) (29 U.S.C. § 1002(8)) of Robert K., who receives health care coverage as a participant (as that term is defined by ERISA § 3(7) 29 U.S.C. § 1002(7)) under a benefit plan sponsored by Parkside Investments LLC (Group/ID PH3175/000849274928). The benefit plan at

3

issue here is an "employee welfare benefit plan" pursuant to ERISA § 3(1) (29 U.S.C. § 1002(1)), ("Plan"). At all relevant times, HCSC served as the insurer and administrator of the Plan and benefits thereunder

14. The Plan reimburses services that are "medically necessary," which is defined to mean: "that a specific medical, health care, supply or Hospital service is required, for the treatment or management of a medical symptom or condition and that the service, supply or care provided is the most efficient and economical service which can safely be provided."

15. The Plan is also subject to the laws of the State of Illinois, which include mandates specific to Autism Spectrum Disorders as set forth in 215 ILCS 5/356z.14. That statute includes the following definitions:

> "Autism spectrum disorders" means pervasive developmental disorders as defined in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including autism, Asperger's disorder, and pervasive developmental disorder not otherwise specified.
>
> "Medically necessary" means any care, treatment, intervention, service or item which will or is reasonably expected to do any of the following: (i) prevent the onset of an illness, condition, injury, disease or disability; (ii) reduce or ameliorate the physical, mental or developmental effects of an illness, condition, injury, disease or disability; or (iii) assist to achieve or maintain maximum functional activity in performing daily activities.
>
> "Treatment for autism spectrum disorders" shall include the following care prescribed, provided, or ordered for an individual diagnosed with an autism spectrum disorder by (A) a physician licensed to practice medicine in all its branches or (B) a certified, registered, or licensed health care professional with expertise in treating effects of autism spectrum disorders when the care is determined to be medically necessary and ordered by a physician licensed to practice medicine in all its branches:
>
> (1) Psychiatric care, meaning direct, consultative, or diagnostic services provided by a licensed psychiatrist.
>
> (2) Psychological care, meaning direct or consultative services provided by a licensed psychologist.

(3) Habilitative or rehabilitative care, meaning professional, counseling, and guidance services and treatment programs, including applied behavior analysis, that are intended to develop, maintain, and restore the functioning of an individual. As used in this subsection (i), "applied behavior analysis" means the design, implementation, and evaluation of environmental modifications using behavioral stimuli and consequences to produce socially significant improvement in human behavior, including the use of direct observation, measurement, and functional analysis of the relations between environment and behavior.

(4) Therapeutic care, including behavioral, speech, occupational, and physical therapies that provide treatment in the following areas: (i) self care and feeding, (ii) pragmatic, receptive, and expressive language, (iii) cognitive functioning, (iv) applied behavior analysis, intervention, and modification, (v) motor planning, and (vi) sensory processing.

## John K.'s Medical and Mental Health Needs

16. John K. has Autism Spectrum Disorder, which was initially diagnosed in 2011 when he was around two years old.

17. In the August 19, 2021 letter determining the medical necessity of 15 hours of ABA therapy per week for John K., the external reviewer, a psychiatrist, documented the following:

> "The most important thing about autism spectrum disorder (ASD) is that there is, in fact, no cure for this disorder; however, currently, there are many claims of pharmacological and dietary therapies and behavioral interventions that are said to improve outcome or even lead to 'cure' or 'recovery.' It continues to remain a challenging condition for children and their families. Research conducted on many of these treatment modalities is limited and, consequently, sufficient evidence does not exist to support their use. The primary aim of this paper was to search for the evidence of the efficacy of each treatment for autism till now. We reviewed different treatment modalities and randomized clinical trials on each treatment to look for the evidence. Although there are interventions that may be effective in alleviating some symptoms and improving skills that help autistic persons lead more productive lives, proven benefits were observed only with applied behavioral analysis (ABA) and some psychophannacologic agents." (Medavarapu, S., et al. 2019).

> "Autism spectrum disorder is characterized by patterns of delay and deviance in the development of social, communicative, and cognitive skills that arise in the first years of life. Although frequently associated with intellectual disability, this condition is distinctive in its course, impact, and treatment. Autism spectrum disorder has a wide range of syndrome expression and its management presents particular challenges for clinicians. Individuals with an autism spectrum disorder can present for clinical care

5

at any point in development. The multiple developmental and behavioral problems associated with this condition necessitate multidisciplinary care, coordination of services, and advocacy for individuals and their families. Early, sustained intervention and the use of multiple treatment modalities are indicated." (Volkmar, F., et al. 2014).

"Individuals with Autism Spectrum Disorder present with unique characteristics, and the interventions designed to address associated challenging behaviors must be highly individualized to best meet their needs and those of their families. This article reviews systems of care to support the child, adolescent, or adult with Autism Spectrum Disorder and/or Intellectual Disability. The review describes mental health/behavioral health services, Intellectual Disability and other support systems, and the systems involved in a child and adolescent's life and transition to adulthood. The types of systems and services, as well as barriers, are delineated with a brief listing of Web sites and references." (Lubetsky, M.J., et al. 2014).

"Autism spectrum disorder is a diagnosis that includes significant social communication deficits/delays along with restricted patterns of interests and behaviors. The prevalence of this diagnosis has increased over the past few decades, and it is unclear whether this is solely attributable to the increased awareness of milder forms of the disorder among medical providers. The current treatment options for the core symptoms of autism are limited to psychosocial therapies, such as applied behavior analysis." (Defilippis, M., et al. 2016).

18. John K.'s treating doctors and therapists have provided letters of medical necessity and treatment plans that have established the necessity for him to receive 15 hours per week of ABA therapy for the foreseeable future. The most recent treatment plan from KGH dated September 1, 2021 described a decline in John K.'s behavior when ABA therapy was reduced in 2020 and earlier in 2021 before it was determined to be medically necessary by the external review organization. John K.'s behavioral changes were attributed to the reduction in ABA therapy. The medical evidence describes deficits in social communication and interaction, inappropriate behavior, safety concerns involving aggression toward others and self-harm, and other maladaptive behaviors. Although the September 1, 2021 report documented some improvement, it also stated that the anticipated treatment goals had been reduced due to the prior disruption in ABA therapy, and that continued ABA therapy at 15 hours per week was required to ultimately allow John K. to live safely at home under the supervision of his parents and to prevent further decline.

6

19. Prior to the September 1, 2021 treatment plan, KGH had written a letter of medical necessity dated August 8, 2021 opining that ongoing ABA therapy at 15 hours per week was necessary for John K. to achieve greater functionality before entering adulthood. KGH further pointed out that the ABA therapy had been beneficial; and it was anticipated that additional therapy would provide "continued meaningful improvement if treatment is covered at medically necessary levels commensurate with [John K.'s] condition." KGH warned that less treatment "will likely result in significant harm." KGH also cited the statutory provisions quoted above, and emphasized that additional treatment was necessary to "achieve or maintain maximum functional ability." KGH further pointed out that when Defendant reduced the level of approved ABA therapy, John K.'s progress "slowed significantly." Finally, KGH noted that 15 hours of ABA therapy per week was well within the standard of care of intensity for treatment of Autism Spectrum Disorders.

20. The independent external reviewer agreed with that assessment, and on August 19, 2021, determined "that with the decrease in ABA therapy, the claimant's behavior worsens, and he has aggression, but it is better controlled with full ABA therapy. Therefore, it is medically necessary that this claimant continue to have ABA therapy."

21. John K.'s condition did not materially change between the issuance of the external review determination and HCSC's September 24, 2021 denial of Plaintiffs' pre-approval request for 15 hours of ongoing ABA therapy for services rendered on or after September 6, 2021.

22. Defendant's prior benefit denial, which was overturned by an independent external reviewer on August 19, 2021, and the denial that followed almost immediately thereafter on September 24, 2021, demonstrates that Defendant has and continues to ignore Illinois statutory mandates for treatment of Autism Spectrum Disorders, and that any further appeals would be futile and certain to be denied since Defendant denied all prior appeals despite the submission of

7

evidence establishing the medical necessity of ABA therapy in accordance with the statutory definition. Plaintiffs have also been informed and believe that Defendant has a history of denying claims for ABA therapy and/or reducing the recommended quantum of ABA therapy that has been prescribed, which further demonstrates the futility of further appeals.

## RELIEF SOUGHT –
## CLAIM FOR BENEFITS, ENFORCEMENT OF RIGHTS,
## AND CLARIFICATION OF FUTURE BENEFIT RIGHTS
## UNDER ERISA § 502(a)(1)(B)

23. Pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), Robert K. and Monica K. on behalf of their son, John K., are entitled to: (1) enforce their rights under the terms of the Plan, (2) clarify their rights to future benefits under the terms of the Plan, and (3) recover benefits due under the Plan that were wrongfully withheld.

24. As administrator of the Plan, HCSC makes all claims determinations and decides all benefit questions under the Plan. HCSC also funds the payment of benefits under the Plan.

25. HCSC has an obligation pursuant to the terms of the Plan and its fiduciary obligations under ERISA § 404 (29 U.S.C. § 1104) to administer claims "solely in the interest of the participants and beneficiaries" and in accordance with the plan terms; and to utilize "higher-than-marketplace quality standards" when rendering claim determinations. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008).

26. HCSC's repeated reductions in the number of hours of ABA therapy that are reimbursable under the Plan notwithstanding an independent reviewer's determination as to the medical necessity of such services was contrary to the medical evidence, contrary to Illinois legal requirements for treatment of autism spectrum disorders, and places John K. at risk of relapse, loss of gains he has made, and prevents the progress he would otherwise achieve if the ABA therapy were covered for 15 hours per week.

27. Due to the ongoing medical necessity of 15 hours of ABA therapy per week, which is a covered service under the terms of the Plan, Plaintiffs are entitled to be reimbursed under the Plan for the expenses they have incurred since 2020 to pay out-of-pocket for the additional hours of ABA therapy incurred beyond what was approved by Defendant. Plaintiffs are also entitled to a finding that such services must continue until John K. has met sufficient goals so that 15 hours of ABA therapy per week is no longer required.

WHEREFORE, Plaintiffs seek the entry of an order directing Defendant to reimburse them for all ABA therapy expenses they have incurred out-of-pocket; and that the Court further direct Defendant to maintain ABA therapy services at the rate of 15 hours per week for John K. until such time as that level of therapy is no longer medically necessary, and for such further relief as this Court deems just and proper, including an award of attorneys' fees pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)), along with prejudgment interest on the expenditure reimbursement owed to Plaintiffs.

Dated: February 2, 2022

By: */s/ Mark D. DeBofsky*
Mark D. DeBofsky
Marie E. Casciari
DeBofsky Sherman Casciari Reynolds P.C.
150 North Wacker Drive, Suite 1925
Chicago, IL 60606
(312) 561-4040 (phone)
(312) 929-0309 (fax)